## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JUSTIN NIGH, individually and on behalf of all others similarly situated | § § § | Docket No. _____ |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| ENERGY PROFESSIONALS GROUP, LLC | § § | FLSA COLLECTIVE ACTION |
| Defendant. | § § | |

## ORIGINAL COMPLAINT

### I.    SUMMARY

1.    Justin Nigh brings this lawsuit to recover unpaid overtime wages and other damages from Energy Professionals Group, LLC (Energy Professionals) under the Fair Labor Standards Act (FLSA).

2.    Nigh, and the other oilfield workers like him, regularly worked more than 40 hours a week.

3.    But Energy Professionals did not pay them overtime.

4.    Instead of paying overtime as required by the FLSA, Energy Professionals improperly classified Nigh and those similarly situated to him as independent contractors and paid them a daily rate with no overtime compensation.

5.    This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II.    JURISDICTION AND VENUE

6.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8.     Energy Professionals conducts substantial business operations in this District and Division.

9.     Energy Professionals maintains a corporate office in this District and Division.

### III.   THE PARTIES

10.     Nigh has worked exclusively through Energy Professionals as a Flowback Consultant since approximately November 2017.

11.     Throughout his employment, Energy Professionals has paid Nigh a day-rate with no overtime compensation and classified him as an independent contractor.

12.     Nigh's consent to be a party plaintiff is attached as Exhibit A.

13.     Nigh brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Energy Professionals' day-rate system (the "Day Rate Workers").

14.     Energy Professionals paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15.     The class of similarly situated employees or potential class members sought to be certified is defined as follows:

> **All oilfield personnel who worked for, or on behalf of, Energy Professionals who were classified as independent contractors and paid a day-rate during the last 3 years.**

16.     **Energy Professionals** is a Delaware limited liability corporation and may be served by serving its registered agent for service of process, Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

### IV.   COVERAGE UNDER THE FLSA

17.     At all times hereinafter mentioned, Energy Professionals has been an employer within

2

the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, Energy Professionals has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, Energy Professionals has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20.     Energy Professionals has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or were produced for commerce, such as oilfield equipment, hand tools, computers, automobiles, and cell phones.

21.     Energy Professionals' annual gross volume of sales has exceeded $1,000,000 in each of the past 3 years.

22.     At all relevant times hereinafter mentioned, Nigh and the Day Rate Workers Day Rate Workers were engaged in commerce or in the production of goods for commerce.

23.     Energy Professionals treated Nigh (and indeed each of the Day Rate Workers) as an employee and uniformly applied the day rate pay practice to Nigh and the Day Rate Workers.

24.     Energy Professionals' misclassification of Nigh and the Day Rate Workers Day Rate Workers as independent contractors does not alter their status as employers for purposes of this FLSA collective action.

## V.    FACTS

25.     Energy Professionals is a global oil and gas staffing company operating worldwide and throughout the United States, including in Texas.

26.     To provide services to many of its customers, Energy Professionals retains workers to perform the services requested by its clients.

3

27.     Many of these individuals worked for Energy Professionals on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class.

28.     Even if their job titles and precise job duties differed, Energy Professionals subjected the Day Rate Workers (including Nigh) to the same or similar illegal pay practices for similar work.

29.     Specifically, Energy Professionals classified all the Day Rate Workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

30.     Energy Professionals uniformly failed to pay overtime for the overtime hours the Day Rate Workers worked.

31.     For example, Nigh has worked for Energy Professionals as a Flowback Consultant since November 2017.

32.     Throughout his employment, Energy Professionals has classified Nigh as an independent contractor and paid him on a day-rate basis.

33.      Energy Professionals directed Nigh to work 12 (or more) hours a day for as many as 7 days in a week.

34.     Nigh worked well in excess of 40 hours each week while employed by Energy Professionals, often for weeks at time.

35.     The work Nigh performed was an essential part of Energy Professionals' core business.

36.     During Nigh's employment with Energy Professionals while he was classified as an independent contractor, Energy Professionals exercised control over all aspects of his job.

37.     Energy Professionals did not require any substantial investment by Nigh for him to perform the work required of him.

38.     Energy Professionals controlled Nigh's opportunity for profit and loss by dictating the

days and hours he worked and the rate he was paid.

39.     Nigh was not required to possess any unique or specialized skillset (other than that maintained by all other workers in his respective position) to perform his job duties.

40.     Nigh has worked exclusively through Energy Professionals as an independent contractor since approximately November 2017.

41.     Indeed, Energy Professionals and/or its clients controlled all of the significant or meaningful aspects of the job duties performed by Nigh.

42.     Energy Professionals exercised control over the hours and locations Nigh worked, tools used, and rates of pay received.

43.     Even though Nigh often worked away from Energy Professionals' offices without the presence of a direct supervisor employed by Energy Professionals, Energy Professionals still controlled significant aspects of Nigh's job activities by enforcing mandatory compliance with Energy Professionals' and/or its client's policies and procedures.

44.     No real investment was required of Nigh to perform his job.

45.     More often than not, Nigh utilized equipment provided by Energy Professionals' clients to perform his job duties.

46.     Nigh did not provide the significant equipment he worked with on a daily basis. Energy Professionals and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Nigh worked.

47.     Nigh did not incur operating expenses like rent, payroll, marketing, and insurance.

48.     Nigh was economically dependent on Energy Professionals during his employment.

49.     Energy Professionals set Nigh's rates of pay, his work schedule, and effectively prevented (or outright prohibited) him from working other jobs for other companies while he was working on jobs for Energy Professionals.

50.     Energy Professionals directly determined Nigh's opportunity for profit and loss.

51.     Nigh's earning opportunity was based on the number of days Energy Professionals scheduled him to work.

52.     Very little skill, training, or initiative was required of Nigh to perform his job duties.

53.     Indeed, the daily and weekly activities of the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Energy Professionals and/or its clients.

54.     Virtually every job function was pre-determined by Energy Professionals and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

55.     The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Energy Professionals and/or its clients policies, procedures, and directives.

56.     Nigh performed routine manual and technical labor duties that were largely dictated by Energy Professionals and/or its clients.

57.     Nigh has worked exclusively through Energy Professionals since November 2017.

58.     Nigh was not employed by Energy Professionals on a project-by-project basis.

59.     In fact, while Nigh was classified as an independent contractor, he was regularly on call for Energy Professionals and/or its clients and was expected to drop everything and work whenever needed.

60.     All of the Day Rate Workers perform similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

61.     The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice.

62.     The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled to work 12 hour shifts for weeks at a time.

63.     Instead of paying them overtime, Defendant paid the Day Rate Workers a day-rate and misclassified them as independent contractors.

64.     Energy Professionals denied the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

65.     The Day Rate workers were never paid on a salary basis. They never received any guaranteed weekly compensation from Energy Professionals irrespective of days worked (i.e., the only compensation they received was the day-rate they were assigned for all hours worked in a single day or week).

66.     Energy Professionals' policy of classifying its oilfield personnel as independent contractors and failing to pay them overtime, violates the FLSA because these workers are, for all purposes, non-exempt workers.

67.     It is undisputed that the Day Rate Workers are working long hours in the oilfield.

68.     Because Nigh and the Day Rate Workers were misclassified as independent contractors by Energy Professionals, they should receive overtime for all hours worked in excess of 40 hours in each workweek.

69.     Energy Professionals' day-rate system violates the FLSA because Nigh and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI.     FLSA VIOLATIONS

70.     As set forth herein, Energy Professionals has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees for workweeks longer than 40 hours without paying them overtime.

71.     Energy Professionals knowingly, willfully, or in reckless disregard carried out this

illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation.

72.     Energy Professionals' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

73.     Accordingly, Nigh and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## VII.   COLLECTIVE ACTION ALLEGATIONS

74.     The illegal pay practices Energy Professionals imposed on Nigh were likewise imposed on the other Day Rate Workers.

75.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

76.     Numerous other individuals who worked with Nigh as oilfield personnel indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

77.     Based on his experiences and tenure with Energy Professionals, Nigh is aware that Energy Professionals' illegal practices were imposed on the members of the Class.

78.     The Day Rate Workers were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty 40 per week.

79.     Energy Professionals' failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of any of the Day Rate Workers.

80.     Nigh's experiences are therefore typical of the other Day Rate Workers.

81.     The specific job titles or precise job locations of the various members of the Class do not prevent class or collective treatment.

82.     Nigh has no interests contrary to, or in conflict with, the members of the Class. Like each member of the Class, Nigh has an interest in obtaining the unpaid overtime wages owed under federal law.

83.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84.     Absent this action, many members of the Class likely will not obtain redress of their injuries and Energy Professionals will reap the unjust benefits of violating the FLSA.

85.     Furthermore, even if some of the members of the Class could afford individual litigation against Energy Professionals, it would be unduly burdensome to the judicial system.

86.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

87.     Nigh's claims are similar to the claims of the other Day Rate Workers. Nigh and the other Day Rate Workers sustained damages arising out of Energy Professionals' illegal and uniform employment policy.

88.     Nigh knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

89.     Even if the numbers of hours varies, the proof and method for calculating damages is common.

90.     Further, there is no detraction from the common nucleus of liability facts.

## X.     JURY DEMAND

91.     Nigh demands a trial by jury.

## XI.    RELIEF SOUGHT

92.    WHEREFORE, Nigh prays for judgment against Energy Professionals as follows:

a.    An Order designating the the FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    For an Order pursuant to Section 16(b) of the FLSA finding Energy Professionals liable for unpaid back wages due to Nigh and the FLSA Class for liquidated damages equal in amount to their unpaid compensation;

c.    For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

d.    For an Order granting such other and further relief as may be necessary and appropriate.


Respectfully submitted,

By:  */s/ Michael A. Josephson*
        **Michael A. Josephson**
        Fed. Id. 27157
        State Bar No. 24014780
        **Lindsay R. Itkin**
        Fed Id. 1458866
        State Bar No. 24068647
        **JOSEPHSON DUNLAP**
        11 Greenway Plaza, Suite 3050
        Houston, Texas 77046
        713-352-1100 – Telephone
        713-352-3300 – Facsimile
        mjosephson@mybackwages.com
        litkin@ mybackwages.com

10

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**